# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| KENNETH JURIST, M.D. | § | |
|    *Plaintiff* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 9:23-cv-127 |
| | § | |
| LION STAR NACOGDOCHES | § | |
| HOSPITAL, LLC D/B/A | § | |
| NACOGDOCHES MEMORIAL HOSPITAL | § | |
|    *Defendant* | § | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff, KENNETH JURIST, M.D. ("Plaintiff" or "Dr. Jurist"), files this Complaint and would respectfully show the Court as follows:

## PARTIES

1. Plaintiff is an individual domiciled in Texas—*i.e.*, Plaintiff resides in Texas with the purpose of making Texas his home. Accordingly, Plaintiff is a Citizen of Texas.

2. Defendant, Lion Star Nacogdoches Hospital, LLC d/b/a Nacogdoches Memorial Hospital ("Lion Star"), is a limited liability company whose members are Citizens of Utah and California. Accordingly, Defendant is a Citizen of Utah and California. Defendant may be served with process through its Registered Agent for Service of Process, Reed Claymon Meeker & Hargett PLLC, 5608 Parkcrest Drive, Suite 200, Austin, Texas 78731.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1332, this Court has diversity of citizenship jurisdiction because there is complete diversity of citizenship among Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

4. Plaintiff is a Citizen of Texas. Plaintiff is domiciled in Texas. In other words, Plaintiff resides in Texas with the purpose of making Texas his home. *See MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).

5. Defendant Lion Star Nacogdoches Hospital, LLC is a Citizen of the States of Utah and California. Lion Star Nacogdoches Hospital, LLC's sole member is Lion Star Group, LLC. The members of Lion Star Group, LLC are Howard Brand, S. Sean Fowler, and Edmund C. King. Mr. Brand and Mr. Fowler are domiciled in California. Mr. King is domiciled in Utah. Thus, Lion Star Nacogdoches Hospital, LLC is a Citizen of Utah and California—at least for diversity of citizenship purposes. *See MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (quoting *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)) ("[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members.").

6. Venue is proper in the U.S. District Court for the Eastern District of Texas, Lufkin Division, pursuant to 28 U.S.C. §1391(b) because the Eastern District of Texas is the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

## CONDITIONS PRECEDENT

7. All conditions precedent have been performed or have occurred.

## FACTS

8. Dr. Jurist is an orthopedic surgeon by training.

9. In February 2019, Dr. Jurist became the Medical Director of the Cecil R. Bomar Rehabilitation Center.

10. The Cecil R. Bomar Rehabilitation Center is part of Nacogdoches Memorial Hospital but was separately managed by a company called Kindred Health Care ("Kindred").[1]

11. Dr. Jurist was contracted by BHS Physicians Network, Inc. who then contracted with Kindred for Dr. Jurist's services as Medical Director.

12. Dr. Jurist was a known and intended third-party beneficiary of the contract between the BHS Physicians Network, Inc. and Kindred.

13. On February 17, 2021, the original two-year contract between by BHS Physicians Network, Inc./Dr. Jurist and Kindred was renewed for one year.

14. In July 2021, Defendant, a for-profit entity, acquired the management rights to Nacogdoches Memorial Hospital.

15. After acquiring the management rights to Nacogdoches Memorial Hospital—and likely prior to that, Defendant became aware of Kindred's contract to manage the Cecil R. Bomar Rehabilitation Center.

16. Defendant also became aware that Dr. Jurist was the Medical Director, and that Kindred had a contract with Dr. Jurist.

17. At the time Defendant acquired the management rights to Nacogdoches Memorial Hospital, Dr. Jurist's wife was working as the Chief Nursing Officer for Nacogdoches Memorial Hospital.  She then became the Chief Nursing Officer for Defendant.

18. On the morning of February 14, 2022, Dr. Jurist received a call from Melanie Stacy, a Division Vice President with Kindred and the regional supervisor for the Cecil R. Bomar Rehabilitation Center.  Stacy told Dr. Jurist that "we" have decided not to renew the annual agreement between BHS Physicians Network, Inc. and Kindred, meaning that Dr. Jurist would no

---

[1] The legal name of the company is Kindred Rehab Group of Texas, LLC d/b/a Kindred Hospital Rehabilitation Services.

3

longer be contracted to provide medical services. Stacy provided no reason or explanation for the decision.

19. Stacy then sent a follow up email to Dr. Jurist's personal email address stating that his last day would be February 16, 2022. In her email, Stacy stated "I wanted to thank you for your service to BOMAR. We do not wish to renew the contract. We appreciate your service."

20. Dr. Jurist was taken completely off-guard by the sudden call and the decision to not renew his contract.

21. Indeed, prior to Stacy's call, Kindred had never raised any issues with his performance as Medical Director for almost three years. In fact, Dr. Jurist's annual evaluations were positive.

22. On or about, February 17, 2022—three days after Kindred terminated Dr. Jurist's contract, Defendant's CEO, Sean Fowler, terminated Dr. Jurist's wife's employment at Lion Star.

23. Dr. Jurist knows that Defendant, and its CEO Sean Fowler in particular, had made several threats concerning Kindred's own contact with Defendant.

24. Dr. Jurist also knows that Fowler also made several negative comments about Dr. Jurist to Kindred representatives and others. For example, Fowler made several comments about how Dr. Jurist was responsible for the low census (patient count), even though that was not even a responsibility of the Medical Director.

25. Further, Fowler also complained that Dr. Jurist would not intentionally misclassify patient's needs in a way that allowed the patient to stay in the facility longer, and in turn generate more revenues for Kindred and Defendant, when such a classification was not appropriate.

26. Interestingly, Lion Star and Fowler are Defendants in a similar lawsuit involving the former Emergency Physicians at Nacogdoches Memorial Hospital and allegations of tortious

inference. *See Emergency Staffing Solutions, Inc. & Hospital Care Consultants, Inc. v. Lions Star Nacogdoches Hospital, LLC, Sean Fowler, & Emergency Care Partners, LLC*, Cause No. 219-02208-2022 (219th Judicial Dist. Ct.—Collin County, Tex).

## COUNT ONE – TORTIOUS INTERFENCE CLAIM

27. Tortious interference, also known as intentional interference with contractual relations, is a common law tort that occurs when a party intentionally sabotages or otherwise damages the plaintiff's contractual business relations with a third party.

28. Defendant was not a party to the contract between BHS Physicians Network, Inc./Dr. Jurist and Kindred—an existing contract.

29. The contract between BHS Physicians Network, Inc./Dr. Jurist and Kindred was a valid contract.

30. Further, Defendant knew of the contract and that the contract was up for renewal in February 2022.

31. On information and belief, Plaintiff pleads that Defendant intentionally caused Kindred to terminate and/or not renew its contract with BHS Physicians Network, Inc./Dr. Jurist for improper reasons.

32. Days after Defendant terminated Dr. Jurist's wife, Kindred suddenly and without any warning terminated and/or declined to renew its contract with BHS Physicians Network, Inc./Dr. Jurist.

33. Stacy's repeated references to "we" also fairly imply that more than one entity was involved in the decision to terminate or not renew the contract.

34. Absent Defendant's interference, there was a reasonable probability that the contract would have been renewed.

35. Defendant's wrongful interference proximately caused Dr. Jurist to suffer actual damages in the form of both economic and non-economic damages.

## DAMAGES

36. Plaintiff seeks to recover lost benefits of the contract in the form of what he would have been paid under the contract absent Defendant's interference. In this case, those lost benefits could be considered lost wages.

37. Plaintiff seeks to recover non-economic damages for mental anguish, injury to name/reputation, and loss of enjoyment of life.

38. Because Defendant acted with intent and malice, Plaintiff seeks punitive and/or exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.003.

## ATTORNEY'S FEES

39. Plaintiff was forced to engage counsel to protect his rights. Plaintiff seeks to recover his reasonable and necessary attorneys' fees and court costs.

## INTEREST

40. Plaintiff is entitled to prejudgment and post-judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

41. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

    a.    Actual damages;

    b.    Punitive/exemplary damages;

  c.  Attorney's fees and costs;

  d.  Prejudgment and post-judgment interest;

  e.  Such other and further relief, at law or in equity, to which Plaintiff may show himself justly and lawfully entitled.

            Respectfully submitted,

            **HIGHTOWER, FRANKLIN,**
            **& JAMES, PLLC**

            /s/ Tanner Franklin
            _____
            **Tanner G.M. Franklin**
            Texas Bar No. 24082506
            tanner@thegoodlawyer.com
            115 South Street
            Nacogdoches, Texas 75961
            (936) 560-3300 – Telephone
            (936) 560-5600 – Fax

            **ATTORNEY FOR PLAINTIFF**